## Martin, et al. v. Martin, et al.

(Decided June 10, 1924.)

### Appeal from Fayette Circuit Court.

1. Wills—"Children" Construed as "Heirs," if Intent Shows such Meaning Intended.—In a devise of property to a woman and her "children, the heirs of her body," word "children" will be construed to mean "heirs," if other words in will show that it was used in that sense by testator, or that it was intended that first taker should have a fee.

2. Wills—Instrument Held to Devise an Estate Tail Resulting in Fee-Simple Title.—A devise of land to a granddaughter "and her children, the heirs of her body," held to create a fee tail in granddaughter, which Ky. Stats., section 2343, converted into a fee simple, and not simply a life estate.

F. A. BULLOCK for appellants.

H. E. ROSS and EDWARD S. DABNEY for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—Affirming.

The last will of Caroline Elliott, made July 15, 1890, which is before us for construction, in so far as it relates to this litigation reads:

"I leave to my son, R. G. Elliott, my house and lot on the corner of Limestone and Maxwell streets, in the city of Lexington, state of Kentucky, for and during his natural life. . . . At the death of my son R. G. Elliott the said house and lot on the corner of Limestone and Maxwell streets, in the city of Lexington, Kentucky, is to go to my granddaughter, Fannie Gill Elliott, and her children, the heirs of her body, and it is to be her sole and separate estate, free from the control or marital rights of any husband she may have."

In a codicil the testatrix says:

"And if my granddaughter, Fannie Gill Elliott, shall die without heirs of her body surviving, then her husband, if any, should he survive her, shall have no interest or estate or estate of any kind in said property by reason of said marriage nor shall he have any estate by the curtesy."

These are the only provisions of the will and codicil necessary to consider in determining the question presented by this appeal, commenced by Francis Gill Martin and her husband, looking to the specific performance of a contract made by them for the sale of the house and lot at the corner of Limestone and Maxwell streets. Since the making of the will and codicil Francis Gill Martin intermarried with J. E. Martin and they have two infant children, one of them over fourteen years of age and the other under fourteen years of age, and these children by their guardian are claiming to be the owners in remainder of the house and lot described as located at the corner of Limestone and Maxwell streets, and insist that their mother owns but a life estate therein.

The testatrix gave to her son, R. G. Elliott, this particular property "for and during his natural life." At his death the house and lot "is to go to my granddaughter, Francis Gill Elliott, and her children, the heirs of her body and it is to be her sole and separate estate, free from the control or marital rights of any husband she may have." Two things were uppermost in the mind of the testatrix: First, she desired to give her granddaughter, Fannie, at least the use if not the fee in the house and lot; and second, to so fix it that her husband, if any Fannie should have, should not control the property or take any interest or estate therein. Had the testatrix said "to my granddaughter, Fannie Gill Elliott, and her children," she would have created an estate in remainder. But had she omitted the words "and her children," and employed the other words in the will "the heirs of her body" only, she would have created an estate tail which our statutes, section 2343, would have converted into a fee simple in Fannie. We have held that where both expressions are employed "to his children, the heirs of his body," without other qualifying words, the first taker is vested with a life estate only with remainder to his children, it being said that the last expression, "the heirs of his body," is merely surplusage, adding nothing whatever to his expression "to his children." Mefford v. Dougherty, 89 Ky. 58. But where there are other words in the deed or will showing that the word "child" or "children" was used in the sense of heirs, as where they are followed by the word "forever," and in other parts of the instrument the words "children" and "heirs" are used interchangeably the word "children" will be read

as meaning heirs and will be construed as a word of limitation and not of purchase. So likewise, where there are words or expressions in a will or deed containing a clause "to his children the heirs of his body," which indicate that the devisor intended that the first taker should be invested with the fee, the courts will so construe it in spite of the technical rules governing the phrases above copied; while, on the other hand, if from a reading of the whole instrument the mind is led to conclude that the testator intended by the use of such expressions to give the first taker merely a life estate the courts will give effect to such construction. Courts seek to discover from the paper the true purpose and intention of the testatrix and so construes the will.

The instrument before us indicates, we think, that the testatrix did not intend to restrict the estate devised to her granddaughter, Fannie Gill Elliott, to one for life, for if she had so intended she would not have employed the words "the heirs of her body;" nor the following words, "to be her sole and separate estate, free from the control or marital rights of any husband she may have," nor would she have said in her codicil that the husband of Fannie, "if any, should he survive her, shall have no interest or estate of any kind in said property by reason of said marriage, nor shall he have any estate by the curtesy." If Fannie was given merely a life estate then her husband could have no estate or interest in the property by curtesy or otherwise after the death of Fannie. This last expression is wholly inconsistent with the contention of appellants that Fannie took merely a life estate. It may further be said that the testatrix understood exactly how to create a life estate—the words to employ—for she aptly used the correct expression twice in these testamentary papers, first, in giving to her son, R. G. Elliott, the house and lot now in controversy "for and during his natural life," the most usual expression employed in creating a life estate. She also employs in the same instrument this expression: "for his own benefit and those who take in remainder," clearly indicating that with respect to the property under consideration at that time she knew how to distinguish a life estate from one in remainder; and second, in a codicil she employed the expression, in giving her son a life estate in a cottage, "to be held by him for and during his natural life." Taking all these expressions together and

reading the instrument from its four corners, we are constrained to hold that appellee, Francis Gill Martin, took and is now vested with a fee simple estate in the house and lot at the corner of Limestone and Maxwell streets in the city of Lexington, and not a mere life estate. The learned chancellor so held in a well considered opinion, and the judgment is affirmed.

Judgment affirmed. Whole court sitting.