CASE 36—PETITION EQUITY—APRIL 26.

# McCauley, Peacher & Co., &c., v. Buckner, &c.

APPEAL FROM CHRISTIAN CIRCUIT COURT.

1. A DEVISE TO ONE AND THE "LAWFUL HEIRS OF HER BODY" is to be regarded as giving to the devisee an absolute estate, unless a contrary intention plainly appears from the will itself.

In this case the words quoted are twice used in the will as descriptive of the estate devised by the testator to his daughter, and the words "her heirs" are used the same number of times, apparently for the same purpose. The testator clearly manifests in the will a fixed purpose that the husband of his daughter should have no control or management of any part of the property devised to her, and to secure it beyond contingency, he appoints a trustee to manage the property

for the benefit of her and "her heirs." *Held*—That there is not enough in the context of the will to authorize the court to assume that the testator intended his daughter to take less than an absolute estate.

2. EVIDENCE.—Testimony to prove what a testator *intended* to express is incompetent.

H. A. PHELPS & SON, BREATHITT & STITES, AND C. H. BUSH FOR APPELLANTS.

A devise to one and "the lawful heirs of her body" passes a life-estate with remainder to the children of the life tenant. (Feltman v. Butts, 8 Bush, 119; Tucker v. Tucker, 78 Ky., 503; Davis v. Hardin, 80 Ky., 673; Turman v. White's Heirs, 14 B. M., 568; Carr v. Estill, 17 B. M., 312.)

CAMPBELL & FERGUSON OF COUNSEL ON SAME SIDE.

PETREE & DOWNER AND JOHN FELAND & SON FOR APPELLEES.

A devise in terms as above, nothing else appearing in the will to manifest a different intention, vests an estate in fee in the first taker, and extrinsic evidence to show a contrary intention is not competent. (Wheeler's Heirs v. Dunlap, 13 B. M., 292; Stephens v. Walker, 8 B. M., 600; Allan v. Vanmeter, 1 Met., 276; Brown v. Alden, 14 B. M., 144; Robb v. Bett & Milam, 12 B. M., 643; True v. Nichols, 2 Duvall, 574; Lockland v. Dowing, 11 B. M. 32; Miller v. Childers, 4 Ky. Law Rep., 719; Blakey v. Bryant, 4 Ky. Law Rep., 991; Brown v. Elzey, 7 Ky. Law Rep., 539.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

The question in this case is, whether Sarah E. Buckner took under the will of her father, S. Gordon, probated in 1852, an absolute or estate for life in the property devised to her. For, if she had only an estate for life, then her son, H. C. Buckner, has an interest in remainder, which may be subjected to the satisfaction of appellant's debts; otherwise not.

The will is as follows: * Second. I wish my son, William M. Gordon, to have five negroes out of my estate, which shall be equal in value to the following five which were given to my daughter Sarah E. Buckner,

in the year, 1837; * * and I also give and bequeath
to my son the Oak Grove and Waggoner tracts of land.
Third. I give and bequeath unto my daughter, Sarah
E. Buckner, *and the lawful heirs of her body*, lands
of my estate of equal value to those given to my son
William M. If, after the division is made, there should
be any landed estate remaining, then I wish such rem-
nant to be equally divided between my son William
M. Gordon and Sarah E. Buckner, *and the lawful
heirs of her body.* Fourth. I wish the balance of my
estate, real and personal, to be equally divided be-
tween my son William M. Gordon and Sarah E. Buck-
ner, and her lawful heirs. It is my wish that F. W.
Buckner, the husband of my daughter Sarah E. Buck-
ner, shall not have any control or management over
any part or parcel of the property left by me to my
daughter Sarah E. Buckner, *and her heirs.* And I
hereby appoint my friend, W. H. Pendleton, trustee
for my daughter S. E. Buckner, *and her heirs*, in the
management of the property of my daughter for the
benefit of her and her heirs, etc."

"Lawful heirs of her body" under our statutes, as
often construed by this court, are words of limitation,
import, and unless a contrary intention plainly appears
from the will itself, are to be regarded as giving to the
devisee an absolute estate. The words quoted are twice
used in the will as descriptive of the estate devised to
Mrs. Buckner, and the words "her heirs" are used the
same number of times apparently for the same pur-
pose. And as the devise to William M. Gordon, son
of the testator, is unaccompanied by the same or any
words descriptive of the estate devised to him, it might

be inferred that the phrases mentioned were intended by the testator to be understood in the sense and meaning of the "children" of Sarah E. Buckner; in which case her interest under the will would be held as either an estate for life, remainder to her children, or else a joint estate with them. But if, looking at the whole will, and giving meaning to each part of it, it can be reasonably inferred the testator had some other object or purpose for the frequent and seemingly unnecessary repetition of the words "heirs of her body" and "her heirs," it should be construed so as to effectuate that purpose, rather than pervert the well-settled meaning of such words.

The testator clearly manifests in the will a fixed purpose that the husband of his daughter should have no control or management of any part of the property devised to her. For not only does he use full and emphatic language for that purpose, but in order to secure it beyond contingency, he appoints a trustee to manage the property for the benefit of her and her heirs. And it is proper to remark that, in connection with that subject, he uses the words "her heirs" instead of "heirs of her body." It is not a reasonable supposition that he intended the trustee to hold the property after her death for the use of her children, but his object evidently was to create for her a separate estate in it, and place it beyond the reach or control of her husband. We do not, therefore, think there is enough in the context of the will to authorize us to assume that the testator intended his daughter to take a less or different estate in the property devised to her than the language of the will, as heretofore in-

terpreted by this court, and as it must be presumed it was understood by him, clearly and legally imports.

The purport and effect of the testimony of the person who wrote the will is simply to prove not what the testator expressed, for about that there is no controversy, but what he intended to express. And, as heretofore held by this court, it is for that purpose incompetent. (Wheeler v. Dunlap, 13 B. M., 291.)

If the testator intended to devise to his daughter merely a life-estate, it would have been easy for him to have said so. And no better evidence of the utility and necessity of the rule of evidence just stated could exist than is afforded by the effort to prove by the draftsman, nearly forty years after he wrote the will, that the language used by him was intended to convey a meaning entirely different from what it imports.

Judgment affirmed.