## Levy's Extx., et al. v. Leeds.

(Decided December 5, 1912.)

Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Wills—Construction of—Title Conveyed by Executrix.—Provisions of will held to give testatrix the right to sell and convey fee simple title to all or any part of the estate devised thereby.

2. Wills—Limitation in Will Only Applicable After Death of Wife.—The limitation expressed in the will was only applicable after the death of the widow at which time the daughter's estate was to be in the hands of the trust company, and while taking the will as a whole it seems the testator scarcely expected his wife to dispose of the house in controversy and expected that it would be undisposed of after her death, there is nothing in the will indicating a purpose to limit her right in this respect, and while her son and daughter both joined with her in the conveyance attacked, their joining in it was unnecessary as her conveyance passed a fee simple title.

3. Wills—Intention of Testator—How It May Be Ascertained.—In order to ascertain the intention of the testator it is sometimes permissible to change the language of the will, to discard words as surplusage when they appear to be without meaning as used, and to supply words, and transpose sentences, but here the will is plain and unambiguous and there is no necessity to transpose or supply words in order to arrive at the intention of the testator.

ALFRED SELLIGMAN, JOSEPH SELLIGMAN for appellant.

HARRISON & HARRISON and JAMES S. PIRTLE for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

This appeal is from a judgment of the second division of the Chancery Branch of the Jefferson Circuit Court, construing the will of Moses Levy. The case was tried upon an agreed state of facts which shows, among other things, that in 1902 Moses Levy owned a large estate, consisting of both real and personal property; that he made a will on that date; that he died leaving surviving him Henrietta Levy, his wife, and two children, a son, Frederick Levy, and a daughter, Lena, who married Emil S. Tachau; that he owned two lots fronting on First street in the city of Louisville; that during the lifetime of Moses Levy, he, his wife and son resided in one of these houses and his daughter and her husband resided in the other. In the first clause of his will he directed that his debts be paid and made many special bequests to charitable institutions. In the seventh clause thereof he provided as follows:

"7th. All the rest and residue of my estate of every kind and wherever situated I give and bequeath and devise to my beloved (wife) Henrietta Levy, for and during her life, with full and complete power and authority to her, to sell, dispose of, convey, invest and reinvest the same, or any part thereof, or the proceeds thereof from time to time as she may deem proper, the proceeds in such case to be held and controlled by her upon the same terms and conditions and with the same powers and authority as the original estate under this will, but no purchaser or purchasers from my wife shall be required to look to the application, investment or reinvestment of said proceeds or any part thereof.

"I further authorize and empower my said wife in her discretion to loan or advance to my son, Frederick

Levy, from time to time so as to enable him to continue or go into business, such sum or sums as in her judgment will not in the aggregate exceed one-half of what will be said Frederick's share of said residuary estate under the provisions of this will at the time of my wife's death. Said Frederick shall execute his promissory note or notes to my wife as executrix of this will for the amount of such loans or advancements payable at such time or times as she may direct and bearing interest from their date at five per cent per annum payable at such intervals as she may direct, and he shall be charged with such loans or advancements in the final division of my residuary estate under this will.

"I give, bequeath and devise all that may remain at the death of my wife of my estate given and devised by this clause to her as follows, to-wit:

"One-half thereof I give and devise to my son, Frederick Levy, subject to a charge for such sum or sums as may have been loaned or advanced to him as hereinbefore authorized and remain unpaid at the time of her death, and in allotting such one-half to my son, Frederick, there shall be included therein as part thereof the house and lot now occupied by me as a residence, the same lying on the west side of First street in Louisville, Ky., beginning at a point (here follows description).

"The other one-half of my estate given and devised to my wife by this clause and remaining at the time of her death I give and devise to the Fidelity Trust and Safety Vault Co. of Louisville, Ky., as trustee and in trust for my daughter, Lena Tachau, for and during her life, with remainder over upon my said daughter's death as hereinafter set forth.

"Said trustee shall pay the income of said one-half in quarterly-yearly installments to my said daughter, Lena, during her life and her receipts shall be sufficient evidence of the payment thereof to her. In allotting said one-half share as aforesaid, to said trustee, there shall be included therein as part thereof a house and lot now occupied by said Emil S. Tachau and Lena Tachau as a home, the same lying on the west side of First street in said city of Louisville, immediately adjoining the house and lot allotted my son, Frederick, as above, on the north, beginning (here follows description) which house and lot my said daughter shall be

permitted during her life to occupy as a home free of charge.

"Said trustee shall have the duties, rights and powers concerning said trust estate hereinafter set forth," &c.

The will further provides that the trust company could not sell this house and lot situated on First street without the written consent of Lena Tachau and her husband, Emil S. Tachau.

After the will was probated, the widow and two children joined in a deed conveying the two houses and lots situated on First street, to Mary E. Leeds for the consideration of $12,000. Mrs. Leeds took possession of them and has rented them out, collected the rents, paid the taxes and other charges thereon from that time to the present. It appears that Mrs. Leeds arrived at the conclusion that the will did not give Henrietta Levy, as executrix of her husband's will, the right nor power to sell the house and lot occupied by Lena Tachau; that she could not, therefore, pass a fee simple title to it, as the husband of Lena Tachau did not join in the conveyance nor give his written consent. And it was for the settlement of this question that the parties agreed upon the facts and presented them to the lower court for settlement, as required by the Code. There is no question about the title being in Mrs. Leeds to the place occupied by Moses Levy and his wife during his life; which was also the place Frederick Levy was to get under certain contingencies named in the will. The only question for this court to consider is: Did a fee simple title pass to Mrs. Leeds by the deed of the widow, Henrietta Levy, in her own right and as executrix of the will of her husband? If it did, the judgment must be reversed; if it did not, the judgment must be affirmed. To settle this question we must ascertain the intention of the testator from the entire will. Appellee's counsel contend that the intention of the testator must be gathered from the instrument itself, as well as from the relation of the testator to the parties in interest, the family arrangements and the circumstances which surrounded the testator at the time he made the will, and that, in order to ascertain his intention, it is sometimes permissible to change the language of the will, to discard words as surplusage when they appear to be without meaning as used, to supply words, to transpose words and sentences, and many authorities

are cited to support this contention, among them being Buschemeyer v. Klein, 139 Ky., 124. This is the correct rule in the construction of wills; therefore, appellee's counsel claim that the following language: "Which house and lot my said daughter shall be permitted during her life to occupy as a home free of charge," limits the power and right of the widow, the executrix, to sell and convey this house and lot. This language of the will taken by itself would seem to have that effect, but it does not so appear when considered in connection with the will as a whole. In the first part of the clause above copied he devised to his wife, Henrietta Levy, all the rest and residue of his estate of every kind wherever situated, for and during her life with full and complete power and authority to sell, dispose of, convey, invest and reinvest the same or any part thereof or the proceeds thererof from time to time as she may deem proper. Further along in the same clause he used the following language: "I give, bequeath and devise all that may remain at the death of my wife of my estate given and devised by this clause to her as follows." He then continues by giving one-half of what remained to his son and by disposing of the other one-half as follows:

"The other one-half of my estate given and devised to my wife by this clause and remaining at the time of her death I give and devise to the Fidelity Trust and Safety Vault Company, of Louisville, Ky., as trustee and in trust for my daughter, Lena Tachau, for and during her life, with remainder over upon my said daughter's death as hereinafter set forth."

Thus it will be seen that the language of the will which permitted Lena Tachau to occupy the house free of charge, had reference to her occupancy after the death of Henrietta Levy and while the daughter's estate was in the hands of the Fidelity Trust and Safety Vault Company. It is evident that the testator did not use this language intending to limit the power that he had given his wife to sell and convey his property during her life. He seems to have had great confidence in the honesty and business ability of his wife. He expressly, without any character of limitation, invested her with full and complete power to *sell and convey all* of his estate, both real and personal, or any part thereof. The only language in the will which it is claimed placed any limitation upon the wife's right to sell and convey,

is that copied above, and that is only applicable after the death of Henrietta Levy at which time the daughter's estate is to be in the hands of the trust company. He knew and was willing to risk the love of the mother for the daughter, and he knew that, as he had devised the mother considerable property, she would provide for the daughter and protect her interests. Taking the will as a whole, it seems that he scarcely expected his wife to dispose of these houses and lots and expected that they would be undisposed of at her death, but there is nothing in the will indicating a purpose on his part to limit his wife's right in that respect. He was willing to risk her business acumen in that regard. The will appears to have been prepared by a person who understood the meaning of the language used. The will is plain and unambiguous and there is no necessity to discard, transpose or to supply words or to change sentences, etc., to arrive at the true intention of the testator. It appears that the widow, in her individual right and as executrix, conveyed both of the houses and lots to Mrs. Leeds. Her daughter and son both joined in the deed, but unnecessarily. Her right and power was complete under the will of her husband, and her deed alone would have been sufficient to convey the fee simple title to Mrs. Leeds.

For these reasons, the judgment of the lower court is reversed, and the cause remanded with directions to the lower court to dispose of the matter as indicated in the opinion.